## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DARRYL HOOD**  **CIVIL ACTION**

**VERSUS**

**NO. 20-CV-830-JWD-EWD**

**ASHLEY HOME FURNITURE STORE**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 23, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

Certified- Return Receipt Requested   7018 0360 0001 1615 7589

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DARRYL HOOD** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 20-CV-830-JWD-EWD** |
| **ASHLEY HOME FURNITURE STORE** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

Before the Court is the Complaint,[1] filed by Plaintiff Darryl Hood ("Plaintiff"). Because Plaintiff has not established a basis for federal subject matter jurisdiction, it is recommended that Plaintiff's suit be dismissed without prejudice on the Court's own motion.

**I.    Background and Plaintiff's Claims**

Plaintiff filed a Complaint in this matter on December 7, 2020 against "Ashley Home Furniture Store ("Ashley").[2] The Complaint alleges a straightforward claim that a marble coffee table owned by Plaintiff and purchased from "Ashley Furniture HomeStore" was damaged in his apartment "by either the peoperty [sic] manager are [sic] maintenance employees" of Plaintiff's apartment complex (Hooper Pointe Apartments) while Plaintiff was not at home.[3]  Plaintiff's complaint against Ashley appears to be based on his belief that the coffee table was improperly repaired with a different color marble.[4]  Plaintiff further alleges that he contacted the East Baton Rouge Police Department and filed a report with Officer Jessica Scott ("Scott") about the damage to the table in May 2020, but Scott wrote a "bad" police report and failed to investigate Plaintiff's allegations and/or make an arrest.  As a result, Plaintiff seeks a finding that Scott engaged in misconduct.[5]  Plaintiff filed invoices/receipts reflecting that he purchased the table, and what

---

[1] R. Doc. 1.
[2] R. Doc. 1.  The Complaint references "Ashley Home Furniture Store" (R. Doc. 1-1, p. 1) but Plaintiff's filed invoice reflects that the correct name of the defendant is "Ashley Furniture HomeStore." R. Doc. 1-1, pp. 14-15.
[3] R. Doc. 1, p. 2.
[4] R. Doc. 1, p. 3.  *See also* photos of the table Plaintiff filed in the record at R. Doc. 11.
[5] R. Doc. 1, pp. 2-5 and *see* police report at R. Doc. 1-1, pp. 2-4.

appears to be at least one other piece of furniture, for approximately $1,500.[6] Plaintiff filed suit against Hooper Pointe Apartments alleging these same claims in the Baton Rouge City Court, Small Claims Division, which suit appears to be currently pending.[7]

On December 28, 2020, Plaintiff was ordered to pay the filing fee or file an Application To Proceed In District Court Without Prepaying Fees or Costs (Long Form) (the "IFP Application").[8] On January 6, 2021, Plaintiff timely filed the IFP Application,[9] which was initially denied by the Court because Plaintiff did not establish that he was entitled to the relief requested.[10] Specifically, the information in the IFP Application stated that Plaintiff receives $794.00 per month in disability benefits and the only expense listed was for monthly utilities of $75.00. Because the IFP Application was denied, Plaintiff was given until February 1, 2021 to pay the $402.00 filing fee. On January 15, 2021, Plaintiff sent a letter to the Court stating that he intended to pay the filing fee, but the letter also contained some information about additional monthly expenses.[11]

As a result of the newly-provided information disclosed in Plaintiff's January 15, 2021 letter that described additional monthly expenses, and because of apparent issues regarding the Court's subject matter jurisdiction, a telephone status conference was scheduled for February 12, 2021.[12] Plaintiff did not appear for the telephone conference or contact the Court; however, it appears that Plaintiff may not have received notice of the telephone conference.[13] Therefore, a show cause hearing was scheduled for March 3, 2021 via Zoom video conference in order for

---

[6] R. Doc. 1-1, pp. 14-15. R. Doc. 1-1, pp. 14-15. Plaintiff apparently paid $4,000 for an entire living room set (*see* R. Doc. 1-1, p. 8), but the invoices reflect that the cost of the coffee table and another table in August 2011 was approximately $1,500. R. Doc. 1-1, pp. 14-15.
[7] R. Doc. 1-1, pp. 8-13.
[8] R. Doc. 2. This Order was reissued on January 4, 2021 to correct the amount of the filing fee to $402.00. R. Doc. 3.
[9] R. Doc. 4.
[10] R. Doc. 6.
[11] R. Doc. 10.
[12] R. Doc. 12.
[13] R. Docs. 13, 15-16.

Plaintiff to show cause why his claims should not be dismissed for failure to pay the filing fee and/or failure to establish the Court's subject matter jurisdiction.[14] After the setting of the show cause hearing, Plaintiff contacted the chambers of the undersigned to advise that he did not have Zoom video conferencing capabilities and to request that the hearing be conducted by telephone on a different date. Plaintiff also advised that he mailed a money order to the Clerk of Court to pay the filing fee in mid-January; however, the Clerk of Court had no record of receiving the money order. The show cause hearing was rescheduled for March 9, 2021 by telephone in order to accommodate Plaintiff.[15]

      The show cause hearing took place on March 9, 2021 with Plaintiff in attendance.[16] It was explained to Plaintiff that the purpose of the initial February 21, 2021 conference and the show cause hearing was to discuss Plaintiff's IFP Application, which was initially denied based on Plaintiff's reported assets of $794 per month in Social Security benefits and only $75 per month in liabilities for utilities.[17] However, Plaintiff's January 15, 2021 letter disclosed additional monthly expenses of $180 in rental payments; $56 in cell phone bills; $130 in Walmart expenses; and $98 in additional food purchases.[18] At the hearing, Plaintiff confirmed the above assets and expenses, and clarified that the Walmart expenses are for groceries and his cell phone bill is now actually $96 per month (not $56). In light of Plaintiff's *pro se* status, the January 15, 2021 letter was liberally construed as a Motion for Reconsideration of the IPF denial, which was granted, and Plaintiff's IFP application was also granted, as supported by Plaintiff's newly-disclosed monthly expenses.[19] It was explained to Plaintiff that, since his application for IFP was granted, he was no

---

[14] R. Doc. 14.
[15] R. Doc. 17.
[16] R. Doc. 19.
[17] R. Docs. 4, 6.
[18] R. Doc. 10.
[19] R. Doc. 19.

longer responsible for paying the filing fee.[20]  Subject matter jurisdiction was discussed with Plaintiff and Plaintiff explained the basis for his claims.

At the conclusion of the hearing, Plaintiff was advised that a report would be issued with a recommendation to the district judge that Plaintiff's claims should be dismissed, but that Plaintiff would have fourteen days to submit objections to the report. Plaintiff was also advised that the district judge would make the final decision and issue a ruling as to whether Plaintiff's claims would be allowed to proceed.

## II.     Law and Analysis

### A.     Plaintiff Has Not Established That This Court Has Subject Matter Jurisdiction

During the show cause hearing, it was explained to Plaintiff that, unlike state district courts, which are courts of general jurisdiction and may therefore hear all types of claims, federal courts may only entertain those cases over which there is specific subject matter jurisdiction.  Federal subject matter jurisdiction may be established in two ways. This Court has subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."[21]  This Court also has subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000.00 exclusive of interest and costs and the parties are completely diverse (*i.e.*, all plaintiffs are citizens of a different state than all defendants).[22]  The burden of establishing federal subject matter jurisdiction is on the party asserting it (here, Plaintiff).[23]  A court may raise on its own at any time the issue of whether subject matter jurisdiction exists.[24]

---

[20] Plaintiff advised the Court that he sent a money order to the Court in the amount of $402 for the filing fee in January but that it had not been cashed.  Plaintiff was advised that the Clerk's Office still had no record of Plaintiff's money order.  Plaintiff stated that he would follow-up with the United States Postal Service regarding his money order.
[21] 28 U.S.C. § 1331.
[22] 28 U.S.C. § 1332.
[23] *Willoughby v. United States ex rel. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).
[24] *McDonal v. Abbott Laboratories*, 408 F.3d 177, 182, n. 5 (5th Cir. 2005).

Plaintiff's Complaint, as currently pled, does not allege a cause of action arising under federal law. Plaintiff's claim of damage to his marble table due to the negligence of either Hooper Pointe Apartments or Ashley fails to state a federal cause of action. Likewise, Plaintiff's request for an investigation into the actions of Officer Scott, or for a finding of misconduct against her, because she allegedly failed to investigate Plaintiff's claims also fails to state a cause of action under federal law. Scott is not a named party to the proceeding. Moreover, it was explained to Plaintiff that there is no federal constitution right supporting this request.[25] During the hearing, Plaintiff stated that he understood, and stated that he does not think he has a cause of action arising under federal law. As Plaintiff's Complaint does not assert a federal civil claim, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1331.

Diversity jurisdiction also does not exist in this case. Plaintiff has not properly pled the citizenship of any party. During the hearing, Plaintiff confirmed that he is a Louisiana citizen; however, pursuant to the Court's research, at least three of the members of Ashley (the only named defendant, which is a limited liability company), are Louisiana residents according to the Secretary of State's website.[26] While residency is not determinative of citizenship, this information suggests that Ashley likely is not diverse from Plaintiff. More importantly, after it was explained to Plaintiff that he would have to allege the citizenship of all of Ashley's members in good faith,[27] Plaintiff confirmed that he does not have any information regarding the citizenship of the Ashley employee who allegedly damaged his marble table or the citizenship of any of the members of Ashley.

---

[25] *See John v. City of San Antonio*, No. 07-380, 2007 WL 9706434, at **13-14 (W.D. Tex. Sept. 21, 2007) ("Plaintiffs' allegation that Officer Hiltpold failed to investigate, or to allow an investigation into, the alleged theft of Mr. John's camera fails to state the violation of a clearly established federal right.") Thus, even if Scott were a party, and Plaintiff could somehow allege a basis for jurisdiction supporting his claim against her, Plaintiff's claim against Scott would still be subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous because it is "based on an indisputably meritless legal theory," and has no realistic chance of success. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).
[26] Plaintiff has not named Hooper Pointe Apartments as a defendant in this case, although as mentioned, he has asserted a claim against it in the Baton Rouge City Court, Small Claims Division. R. Doc. 1-1, pp. 8-13.
[27] It was explained to Plaintiff that he does not have to conclusively prove citizenship, but he is required to allege the parties' citizenship and the amount in controversy in good faith.

Further, Plaintiff has not alleged that his damages are likely to exceed $75,000, exclusive of interest and costs, and the information filed by Plaintiff reflects that Plaintiff's damages will likely fall far short of the jurisdictional threshold. The cost of the table does not exceed $1,400, as shown by the invoices in the record reflecting Plaintiff's purchase of the table (and another piece of furniture).[28] Even if Plaintiff were to prevail on his claims and be awarded some amount of nonpecuniary damages, such an award would also likely fall short of the jurisdictional threshold.[29] Importantly, Plaintiff acknowledged during the hearing that his damages will not exceed $75,000, exclusive of interest and costs.  Therefore, as Plaintiff has not alleged complete diversity or damages likely to exceed $75,000, exclusive of interest and costs, the Court does not have subject matter jurisdiction under 28 U.S.C. § 1332.

"A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction."[30]  "A district court can dismiss an action *sua sponte* for lack of federal subject matter jurisdiction…even where the defendant makes no responsive pleadings and does not move to dismiss for want of subject-matter jurisdiction."[31]  Because Plaintiff has not met his burden of establishing that this Court has federal subject matter jurisdiction, this case should be dismissed without prejudice.

---

[28] R. Doc. 1-1, pp. 14-15.
[29] *See, e.g., Growe v. Johnson,* 2020-0143 (La.App. 4 Cir. 2/17/21) (in addition to award of $2,600 for total replacement of tenant's non-repairable furniture due to water damage that was not ameliorated by landlord, also awarding $5,000 for the plaintiff's mental anguish suffered as a result of the repeated water intrusion and destruction of the plaintiff's personal property over a three and a half year period, and noting mental anguish awards for destruction of property in similar cases fell in the $600 to $25,000 range).
[30] *Edwards v. Jackson Hinds Comprehensive Health Center*, No. 17-972, 2018 WL 3653761 (S.D. Miss. June 11, 2018), at *1 (quoting *Nixon v. Goldman Sachs Mortg. Corp.*, No. 16-597, 2016 WL 3763425, at **2–3 (N.D. Tex. July 14, 2016) (citing 28 U.S.C. §§ 1331, 1332); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). *See also McKendall v. U.S. Army Corps of Engineers*, No. 15-2631, 2016 WL 3218842, at *1 (E.D. La. June 10, 2016) ("The party asserting jurisdiction bears the burden of establishing that the district court possesses subject-matter jurisdiction.") (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).
[31] *Dickens v. TASB Risk Management*, No. 17-00216, 2018 WL 6184804, at *1 (W.D. Tex. Nov. 21, 2018). *See also*, *Craig v. Our Lady of the Lake Regional Medical Center*, No. 15-814, 2017 WL 1113326, at *2 (M.D. La. March 23, 2017) ("The Court may dismiss an action *sua sponte* if it 'determines at any time that it lacks subject-matter jurisdiction.'") (citing Fed. R. Civ. P. 12(h)(3)).

### B.  Leave to Amend is Not Warranted Because Further Amendments Would Be Futile

Finally, leave to amend is not warranted in this case. Plaintiff has not requested leave to amend.  Further, Plaintiff admitted under oath at the hearing that he has no federal cause of action; he has no information regarding the citizenship of the parties and some appear to be non-diverse; and his damages do not and will not meet the jurisdictional threshold.[32]  In light of these admissions, leave to amend is not warranted, as Plaintiff has already acknowledged that he cannot establish federal subject matter jurisdiction on the claims asserted and thus further amendments would be futile.[33]

### III.  Conclusion, Order and Recommendations

As federal subject matter jurisdiction has not been established, **IT IS RECOMMENDED** that this case be **DISMISSED WITHOUT PREJUDICE**.  Leave to amend is not warranted because Plaintiff has admitted that he has no good faith basis to assert federal subject matter jurisdiction, and thus, further amendments would be futile.

**IT IS ORDERED** that the Clerk of Court is directed to send a copy of this Magistrate Judge's Report and Recommendation to Plaintiff at his address listed on PACER, via certified mail return receipt requested, and via regular mail.

Signed in Baton Rouge, Louisiana, on March 23, 2021.

                                              **ERIN WILDER-DOOMES**
                                              **UNITED STATES MAGISTRATE JUDGE**

---

[32] Plaintiff was sworn under oath at the beginning of the show cause hearing.  While not dispositive, it is notable that Plaintiff stated during the show cause hearing that proceeding further in this Court did not make sense to him any longer and that he intends to pursue his claims in the Baton Rouge City Court.

[33] *See, e.g., Payton v. Bizal,* No. 20-1780, 2021 WL 430688, at *3 (E.D. La. Feb. 8, 2021) (denying leave for further amendments to *pro se* Plaintiff in part because the proposed amendments would not cure the noted jurisdictional defects).